I,WILLIAMS, Judge.
The plaintiff, Frank Swayze, appeals a district court judgment in favor of the defendants, State Department of Transportation and Development (“DOTD”) and the City of Winnsboro. The court dismissed the plaintiffs claim for compensation for a feed-store building located on property expropriated by the State. For the following reasons, we affirm.
FACTS
In the late 1800’s, the Missouri Pacific Railroad (“Railroad”) acquired a right-of-way over lands owned by the ancestors in title of Nell Carter Ramage Williamson. The lands are located within the city limits of Winnsboro, Franklin Parish, Louisiana. In 1967, L.W. Knipp leased a portion of the right-of-way from the Railroad to operate a bulk feed business and constructed a warehouse building on the property.
In January 1970, Frank Swayze purchased the bulk feed business from Knipp. On April 21, 1972, the Railroad executed a document whereby it leased a portion of its right-of-way to Knipp. This document is referred to as the “Basic Lease.” The following day, the Railroad and Knipp agreed to sublease the premises to Frank Swayze, who would continue to operate the business. The sublease provided that Swayze, with respect to his property and operations on the premises, would be bound by the terms and conditions of the *1279 Basic Lease, which states that the lessee’s occupancy was limited solely to certain listed structures. The lease allowed for the occupancy of additional structures upon written approval of the Railroad.
In July 1979, Swayze sold his interest in the lease and the feed business to Bobby Riddle and Charles Linder. Swayze provided the financing for the sale. A short time later, Riddle and Linder transferred 1 ¡¡.their interests to the Swayze Feed Company, Inc., in which Swayze was not a shareholder. The corporation assumed the indebtedness to Swayze.
On January 31, 1983, the Interstate Commerce Commission (ICC) accepted the closure and abandonment of the Railroad’s line through Franklin Parish, terminating the right-of-way. In May 1983, the DOTD filed a petition and order to expropriate the land which had been subject to the former Railroad right-of-way, naming as defendants “unknown owners.” On October 5, 1983, Swayze Feed Company, Inc., executed a dation en .paiement transferring its interest in the Railroad lease back to Swayze.
In other proceedings, Nell Ramage Williamson and several others asserted ownership of the expropriated land. These claimants were recognized as the owners of the property and were compensated for the value of the land by the State. DOTD v. Williamson, 557 So.2d 731 (La.App. 2d Cir.1990).
In December 1986, the plaintiff, Frank Swayze, filed a petition for damages against the DOTD, seeking compensation for loss of the use of the leased premises and asserting ownership of the building located on the property. In September 1991, DOTD transferred the land to the City of Winnsboro, which is the present owner. The City was joined as a party defendant in this litigation. The parties agreed to a bifurcated trial of the issues of entitlement to compensation and damages.
Subsequently, the trial court issued written reasons for judgment, finding that plaintiffs rights as lessee could only be enforced against the lessor, and not the DOTD as a third party. The court also found that plaintiff did not have the consent of the owners to place improvements on |3the land, so that when the Railroad abandoned the right-of-way, the owners of the immovable owned the building. Additionally, the court determined that plaintiff did not acquire any interest by the dation en paiement, because the lease had been terminated upon abandonment of the right-of-way. The court rendered judgment in favor of the defendants dismissing plaintiffs claims.[1] The plaintiff appeals the judgment.
DISCUSSION
The plaintiff contends the trial court erred in finding that the State did not owe him compensation for the store building located on previously leased land. Plaintiff argues that he is the owner of property which was expropriated by the State and is entitled to compensation under the Louisiana Constitution.
The interpretation of a contract or lease involves a determination of the common intent of the parties. LSA-C.C. art. 2045. Their intent is determined in accordance with the general, ordinary and plain meaning of the words used in the contract. LSA-C.C. art. 2047; Lindsey v. Poole, 579 So.2d 1145 (La.App. 2d Cir.1991).
The Louisiana Civil Code provides for the personal servitude. LSA-C.C. art. *1280 533. A personal servitude is a charge on a thing for the benefit of a person, and includes the right of use. LSA-C.C. art. 534. Limited personal servitudes are real rights that confer on a person limited advantages of use or enjoyment over an immovable belonging to another. Yiannopoulos, 3 Civil Law Treatise § 223 (4th Ed. 2000).
|4The personal servitude of right of use confers a specified use of an estate less than full enjoyment in favor of a person. LSA-C.C. art. 639. A right of use servitude is regulated by application of the rules governing usufruct and predial servi-tudes to the extent that their application is compatible with the rules of limited personal servitudes. LSA-C.C. art. 645.
In the present case, the Railroad obtained a limited personal servitude of right of use over land owned by Nell Williamson and others. In April 1972, the Railroad leased a portion of the servitude to Knipp with a sublease to plaintiff. This sublease of the Railroad’s servitude is the basis of the plaintiffs right to use the premises. The sublease incorporated by reference the terms of the Basic Lease between the Railroad and its lessee, Knipp.
The Basic Lease provides in pertinent part:
6. (a) Lessee, in a workmanlike manner, shall remove, within thirty days after conclusion howsoever of this lease, the Lessee’s Property ... and restore Premises, including the backfilling of any basement ..., and leave Premises in a clean, safe, good, [habitable] and orderly condition....
(b) In case Lessee shall fail, within thirty (30) days after conclusion howsoever of this lease, to make such removal and restoration, then Carrier may, at its election at any time subsequent thereto, and Lessee hereby so agrees, then either remove the Lessee’s Property, dispose of Lessee’s Property and restore the Premises for the account of Lessee, ... or may, upon notification to that effect ... take and hold the Lessee’s Property as Carrier’s sole property.
The parties stipulated that in July 1979, plaintiff transferred his interest in the sublease and feed business to Riddle and Lin-der, who later granted the lease interest to Swayze Feed Company, Inc. On January 31, 1983, the Railroad obtained approval from the ICC to close and abandon its rail line through Winnsboro. In May 1983, the DOTD expropriated the land which previously comprised the Railroad’s right-of-way. Subsequently, in 1 BOctober 1983, Swayze Feed Company, Inc. executed a dation en paiement transferring its lease interest back to the plaintiff.
Louisiana courts have previously found that the provisions of the parties’ lease control the resolution of issues concerning improvements constructed by the subles-see. State DOTD v. Louisiana Nat’l Bank, 594 So.2d 918 (La.App. 1st 1991). A servitude must confer a benefit to the person in whose favor the servitude is created. LSA-C.C. art. 647.
Here, when the Railroad closed and abandoned its rail line, the right-of-way servitude no longer served a useful purpose. Thus, because the Railroad did not derive a benefit from its right of use, the servitude ceased.
Pursuant to LSA-C.C. art. 2730, a lease made by one having a right of usufruct ends when the right ceases. By analogy to the present situation, when the Railroad’s servitude ceased on January 31, 1983, its lease with the plaintiff ended. As previously noted, the lease expressly required plaintiff to remove his property and restore the. premises to a clean and safe condition within 30 days after termination of the lease. Thus, if plaintiff wanted to retain the building, he should have removed the structure by March 2, 1983. There was no evidence that plaintiff had been prevented from removing the building during that time period.
*1281 Under the provisions of the lease, the plaintiff relinquished his interest in the building by failing to remove the structure. Consequently, plaintiff did not possess an interest in the property at the time the State expropriated the premises and is not entitled to compensation.
The plaintiff cites several cases in support of his argument. However, the facts of those cases are distinguishable from the facts of the present pease. In State v. Illinois Central Railroad Co., 256 So.2d 819 (La.App. 2d Cir.1972) and DOTD v. Manuel, 451 So.2d 659 (La.App. 3rd Cir. 1984), the leases at issue remained in effect at the time of the State’s expropriation. In contrast, here, the plaintiffs lease interest and his right to remove the building had terminated before the State expropriated the land.
The plaintiff argues that he is owed compensation because the lessor failed to demand removal of the building from the leased premises. However, the lease did not require that the Railroad make any such demand. Rather, the lease placed an affirmative duty upon the plaintiff to remove any structure he claimed as his property within a specified time. This argument lacks merit.
The plaintiff contends the evidence does not support the trial court’s finding that he sold the store building in the 1979 transaction and was not the owner at the time of expropriation. We need not address this issue, because even if one assumes the building was plaintiffs property, then he relinquished his interests when he failed to remove the structure as expressly required by the applicable lease provisions.
Based upon this record, we cannot say the trial court was clearly wrong in concluding that plaintiff was not deprived of a property interest when the State expropriated the land comprising the Railroad servitude. Consequently, the plaintiff has failed to establish that he was entitled to compensation as a result of the expropriation proceeding. The assignments of error lack merit.
CONCLUSION
For the foregoing reasons, the trial court’s judgment in favor of the ^defendants, State DOTD and the City of Winnsboro, is affirmed. Costs of this appeal are assessed to the appellant, Frank Swayze.
AFFIRMED.

. The DOTD filed an exception of prescription which was denied by the district court. In affirming the court’s dismissal of the plaintiff’s claims, we pretermit a discussion of the prescription issue.